*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERIC LAMONTEE BECK,

        Defendant-Appellant.

UNPUBLISHED
June 23, 2022

No. 357126
Saginaw Circuit Court
LC No. 13-039031-FC

Before: GLEICHER, C.J., and SAWYER and GARRETT, JJ.

PER CURIAM.

The Michigan Supreme Court remanded this matter for resentencing because the trial court improperly imposed an upwardly departing sentence based on conduct for which Eric Lamontee Beck was jury acquitted. The trial court begrudgingly complied with the Supreme Court's order but continued to impose a sentence significantly higher than the top of the recommended minimum sentencing guidelines range without adequate justification for the extent of the departure. We again vacate Beck's sentence and remand for resentencing, this time before a different judge.

## I. BACKGROUND

On June 11, 2013, someone fatally shot Hoshea Pruitt. Jamira Calais heard three or four shots and saw a man in a black shirt run across the street carrying a gun. Calais could not identify the shooter. Mary Loyd-Deal testified at the preliminary examination that she saw the shooting and could identify Beck as the shooter. Loyd-Deal's statements were inconsistent, however. Although Loyd-Deal claimed to have witnessed the shooting, she also described being inside her home at the time. And Loyd-Deal passed away before trial, leaving the jury with only her preliminary examination testimony. Aaron Fuse did not witness the shooting, but testified that a few days after, Beck told him "that he had done 'something stupid' and shot someone while arguing about a woman." *People v Beck*, unpublished per curiam opinion of the Court of Appeals, issued November 17, 2015 (Docket No. 321806) (*Beck I*), p 1.

The prosecutor charged Beck with murder, carrying a dangerous weapon with unlawful intent, felon in possession of a firearm, and three counts of possession of a firearm during the

commission of a felony (felony-firearm). The jury acquitted Beck of murder and carrying a dangerous weapon as well as the two connected felony-firearm charges, but convicted him of felon in possession and its connected felony-firearm charge. *Id.* at 2. Saginaw Circuit Court Judge James T. Borchard sentenced Beck as a fourth-offense habitual offender to a five-year sentence for felony-firearm to be served consecutively to the felon-in-possession sentence. Beck's minimum sentencing guidelines range was calculated at 22 to 76 months. Judge Borchard imposed a sentence of 20 to 33½ years for the felon-in-possession conviction, more than triple the upper end of the guidelines range. *Id.* In doing so, the judge explained:

> "With respect to that charge the Court does find that there are compelling reasons to go over the guidelines. The Court believes that . . . to sentence within the guidelines would not be proportionate to the seriousness of the defendant's conduct or the seriousness of his criminal history. And for that reason the Court is going to go over the guidelines in setting a sentence that is, in fact, proportionate to those things.
>
> In addition to that, the maximum—when you reach the maximum on the guidelines in this case it's at 75 points, this is way over that at 125 points. That is another reason the Court may, and will go over the guidelines in this case.
>
> This gentleman has a prior murder conviction on his record that he pled guilty to for which he served 13 years in prison. That was in 1991. He was discharged from parole in 2007. In 2010, only three years later, he pled no contest to a firearms, possession by a felon for which he received 252 days in jail. And then this charge, offense date was June 11, 2013 where, again, he is in possession of a firearm at a murder scene.
>
> The testimony in this case by one of the witnesses who could not identify him was that a man approached the victim with a gun. She saw a muzzle flash and the victim fell to the ground and the perpetrator ran off.
>
> The other witness, who was not alive at the time of the trial, and was barely alive at the time of the prelim, identified this gentleman as the person who approached the victim with the gun. Gave a positive identification. Indicated she saw the gun. Then her story wavered as far as whether she saw the shooting or whether she was in her kitchen at the time of the shooting. I think the inconsistency, and where she was at the time of the shooting, as well as her not being in court, affected the jury's verdict. *They could not find, beyond a reasonable doubt, that the defendant committed the homicide. But the Court certainly finds that there is a preponderance of the evidence that he did.*
>
> And I am not substituting my opinion for their's [sic]. I am just bound by a different standard in this matter. And that is the reason for the Court's finding that, in fact, this gentleman, in my opinion, did kill the victim for no reason other than jealousy. But, at the very minimum, he was the only person seen at the scene with a weapon seconds prior. Two people hearing a shot, and another lady seeing a shoot[ing] by someone she couldn't identify. And, certainly, provided the

weapon. *But in the Court's opinion, he didn't just provide it, he actually was the person who perpetrated the killing. And I do find by a preponderance of the evidence that that has been shown. And I do consider that in going over the guidelines in this matter.*

So for the fact that the guidelines don't properly—are so far out of scoring of 125, where 75 is the highest—but, more importantly, the fact that there was a death. And the Court finds by a preponderance of the evidence that this gentleman did shoot the victim." [*People v Beck*, 504 Mich 605, 610-612; 939 NW2d 213 (2019) (*Beck II*) (emphasis in original).]

A panel of this Court affirmed the upwardly departing sentence. Beck challenged the trial court's reliance on the murder he was acquitted of in imposing sentence. The *Beck I* panel deemed this a proper factor for consideration at sentencing. *Beck I*, pp 2-3. The panel also opined that the trial court cited substantial and compelling reasons for the upward departure. *Id*. at 4. However, following Beck's sentencing hearing, the Supreme Court decided *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), which rendered the legislative sentencing guidelines advisory and provided that departure sentences must be evaluated for reasonableness. *Beck I*, p 3. Accordingly, the panel remanded to the trial court to allow Beck to request resentencing under the new parameters. *Id*. at 4.

The Supreme Court then took the case. After analyzing caselaw from the United States and Michigan Supreme Courts, the Court held that "when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent" of those acts. *Beck II*, 504 Mich at 626. Permitting the trial court to rely on acquitted conduct in fashioning a sentence "is fundamentally inconsistent with the presumption of innocence itself." *Id*. at 627 (quotation marks and citation omitted). The Court elaborated that "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *Id*. at 629. By relying on such conduct, the trial court had "punished the defendant more severely on the basis of the judge's finding by a preponderance of the evidence that the defendant committed the murder of which the jury had acquitted him." *Id*. Accordingly, the Court vacated Beck's upwardly departing sentence for felon in possession and remanded for resentencing. The Supreme Court denied Beck's request to remand for resentencing before a different judge, however. *Id*. at 610 n 2.

The prosecution filed a petition for a writ of certiorari in the United States Supreme Court and sought a stay of resentencing in the trial court while the petition was pending. Defense counsel objected because the application "could take years." The following colloquy ensued between Judge Borchard and defense counsel:

> *The Court*. Even if resentenced he isn't getting out in the next few years.
> *[Defense Counsel]*. Well, I'm not sure.
> *The Court*. I am.
>
> *[Defense Counsel]*. Well - -

*The Court.*  This man was previously convicted of murder.

*[Defense Counsel]*.  Which was accounted for, Judge.  That was accounted for in the guidelines.

*The Court.*  No, it isn't.  Not in my mind anyhow.  I mean you can renew your motion at a future date if it takes that long.  But even if anything got taken off his sentence it isn't going to happen, he still wouldn't be getting out in the next few years.  I mean, obviously, I understand the Michigan Supreme Court ruling.  I also understand the U.S. Supreme Court's view on the same issues.  *I don't think their previous cases are as confusing as the Michigan Supreme Court thought they were, or at least four of the members of the Michigan Supreme Court.*  And we will keep tabs on it.  [Emphasis added.]

Following this hearing, Beck filed a motion to disqualify Judge Borchard from conducting the resentencing.  Defense counsel interpreted Judge Borchard's statements, "tone and tenor," to mean that he intended to impose the same sentence as before.  Judge Borchard denied the motion to disqualify, explaining that he would consider the parties' briefs and would impose a new sentence.  "But," Judge Borchard continued, "he is obviously going to get a stiff sentence because of all those factors."  The judge further noted:

> Obviously, I would have to amend my sentence to take into account the Supreme Court's ruling.  And once again, that was a four to three decision.  *And I, in my mind, don't feel I did anything wrong.*  But I have to accept the fact that they ruled that he needs to be resentenced without that being included.  [Emphasis added.]

At the resentencing hearing, Judge Borchard adjusted the scores for various sentencing variables that had included consideration of the acquitted offenses.  This reduced Beck's minimum sentencing guidelines range for the felon-in-possession conviction to only five to 46 months.  Judge Borchard imposed a new sentence of 12 to 20 years' imprisonment, again approximately three times the upper limit of the range.  The judge reasoned:

> He was convicted of being a felon in possession of a firearm, which obviously the legislation deemed that was proper.  And went so far as to say if you had a felony - - commit a felony and you have a gun in your possession he was mandated to do five years for that charge alone.

> His weapons [convictions] go back to 1985 as a juvenile when he was convicted of carrying a concealed weapon.  We come to 1991 where he was convicted of second degree murder and felony firearm.  Once again, a firearm in his possession used to murder somebody.  In 2010 he was once again convicted of firearm, possession by a felon.  Pled no contest to that.  And then we are here today with this offense, another weapons offense.

> I'm not going to repeat all my reasons for exceeding the guidelines.  I obviously am not considering anything in regard to the victim that was murdered in this case that he was found not guilty of.  But, I am considering his extensive and

-4-

long history of weapons offenses. And, for some reason it fails to register with him that that he is not allowed to carry a weapon. And, especially in light of the fact that he has a prior murder conviction using a firearm.

And so for those reasons, and the reasons I have stated previously, I am going to reduce his sentence to a minimum of 12 years, a maximum of 20. The guidelines, as you know, are only advisory in nature, and I don't think they take into consideration his extensive history with weapons offenses. And those are the reasons I am going 12 to 20.

Beck again appeals.

## II. DEPARTURE SENTENCE

We review for an abuse of discretion "whether a defendant's departure sentence is so unreasonable as to" warrant resentencing. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The reasonableness of a departure sentence is determined by evaluating whether that sentence violates the principle of proportionality, which "requires 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id*. at 474, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

Although the legislative sentencing guidelines are advisory only, they "remain a highly relevant consideration in the trial court's exercise of sentencing discretion" and must be consulted and considered in fashioning a reasonable, proportionate departure sentence. *Id*. at 474-475 (quotation marks and citations omitted). But the guidelines are not the only relevant factor to consider.

> [R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight. [*People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted).]

Further, a court imposing a departure sentence must justify the extent of the departure, not just the decision to depart. The court must explain "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. (quotation marks and citation omitted).

In resentencing Beck for felon in possession, Judge Borchard focused heavily on Beck's history of firearm-related offenses. With one exception, these prior convictions were accounted for in the scoring of Beck's prior record variables (PRVs).[1] Beck's recidivism also was already used to enhance his sentence as a fourth-offense habitual offender. Judge Borchard acknowledged

---

[1] The court reduced PRV 2 by 10 points as one of Beck's felony-firearm convictions was too old to be considered.

that Beck's prior firearm offenses were considered in scoring the guidelines, but opined they were given inadequate weight. Judge Borchard did not err or abuse his discretion in considering this factor.

Judge Borchard further indicated that he continued to rely on his previously stated reasons for departing from the guidelines, except for relying on the acquitted conduct. At Beck's original sentencing, Judge Borchard cited only one other ground for imposing a departure sentence: that Beck's total offense variable (OV) score of 125 was well beyond the 75-point top of the sentencing grid, supporting a sentence in excess of that permitted under the grid. Absent consideration of the charges for which Beck was acquitted, however, his new total OV score is zero. And his total PRV score of 42 falls within the mid-range of the sentencing grid. It is no longer true that the nature of the offense or the offender resulted in scores in excess of those contemplated by the sentencing grid, let alone scores "so far out" from the grid that a within guidelines sentence would be disproportionate. See *Beck II*, 504 Mich at 612. Accordingly, this was an improper ground for departure.

As a result, we must vacate Beck's felon-in-possession sentence and remand for another resentencing hearing.

### III. JUDICIAL DISQUALIFICATION

On remand, this matter must be reassigned to a different judge.

In determining whether resentencing should occur before a different judge, this Court applies the following test:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (citations omitted).]

"A case should be assigned to a different judge if it would be unreasonable to expect the trial judge, given her handling of the matter, to be able to put previously expressed findings out of mind without substantial difficulty." *People v Pillar*, 233 Mich App 267, 270-271; 590 NW2d 622 (1998).

Judge Borchard twice expressed his disagreement with the constitutionally based decision rendered by our Supreme Court in *Beck II*. Twice he expressed that he had done nothing amiss in violating Beck's basic right to the presumption of innocence. Thereafter, Judge Borchard did impose a new sentence. However, that sentence was also three times the upper limit of the revised minimum sentencing guidelines range. And by declining to reiterate his grounds for imposing a departure sentence. Judge Borchard avoided acknowledging the substantial reduction in Beck's total OV score, or to explain why the same extent of departure was warranted in light of the dramatically reduced guidelines score. Reassignment is necessary to preserve the appearance of justice and because Judge Borchard has signaled that he is unable to set aside his previously expressed, and erroneous, views and findings.

We vacate Beck's felon-in-possession sentence and remand for reassignment and resentencing. Resentencing must occur within 28 days. This opinion has immediate effect. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kristina Robinson Garrett